UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MADAN B K, GERAN GAO, PRANIL
TITARE, KUNZHE SONG, NAGA
MANIKANTA CHIGURUPATI,
AISHWARYA SHRESTHA, SRIKANTH           Case No. 1:25-cv-419
BOPPUDI, DHANUSH POTHUGUNTA,
HARSHIT GAZIBANDA, and NAG IZAAZ        HON. JANE M. BECKERING
SHAIK,

         Plaintiffs,

v.

KRISTI NOEM, et al.,

         Defendants.

_____/


**OPINION AND ORDER**


Plaintiffs are ten international students at universities in Michigan and elsewhere who

received notice from their educational institutions that the government records used to document

their legal nonimmigrant status had been terminated by the Department of Homeland Security

(DHS).  On April 14, 2025, Plaintiffs sued Kristi Noem, the Department's Secretary, and others,

alleging that the Department's action was contrary to the Due Process Clause of the United States

Constitution (Counts 1 & 4) and that the action violated the Administrative Procedure Act because

it was arbitrary, capricious, and contrary to law (Counts 2 & 3) (Compl., ECF No. 1).  Pending

before the Court is Plaintiffs' April 15, 2025 Emergency Ex Parte Motion for Temporary

Restraining Order and Preliminary Injunction (ECF No. 5).  At this juncture, the Court is focusing

on only Plaintiffs' request for a temporary restraining order (TRO), which has now been fully

briefed. Additionally, the Court had the benefit of oral argument on April 22, 2025.  Upon review

of the Verified Complaint and attached exhibits, the arguments presented in open court, and the

motion briefing and exhibits of the parties, the Court grants Plaintiffs' request for a TRO for the

reasons stated on the record and more fully herein.

## I.  BACKGROUND

### A.  Legal Context

While further briefing in this case will doubtless provide additional insight into the myriad

of intersecting immigration statutes and regulations, the Court includes the following brief

overview at this stage in the litigation to define several key terms.  The terms are distinct from one

another and important to understanding the legal context for the motion at bar.

*F-1 Visas.*    Under the Immigration and Nationality Act ("INA"), 8 U.S.C.

§ 1101(a)(15)(F), noncitizens can enroll in government-approved academic institutions as F-1

nonimmigrant students.  *See* 8 C.F.R. § 214.1(a)(2) (delineating classification designations,

including "F-1").  An academic institution must obtain formal approval from DHS before it can

sponsor an F-1 student.  *See* 8 C.F.R. § 214.3 (Certification and recertification of schools for

enrollment of nonimmigrants).  Each school that sponsors an F-1 student has a Designated School

Official ("DSO") who monitors, advises, and oversees the students attending that school.  The

United States Department of State is the entity charged with issuing F-1 nonimmigrant visas to

admitted international students.  A visa, while a critical document, does not govern how long an

F-1 student may stay in the United States.

*F-1 Status.*  Once students enter the United States, they are granted F-1 student *status* and

permitted to remain in the United States for the duration of status ("D/S") as long as the student

continues to meet the requirements established by the regulations governing the student's visa

classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. "Duration of status" is defined, in general, as "the time during which an F-1 student is pursuing a full course of study at an educational institution certified [] for attendance by foreign students, or engaging in authorized practical training following completion of studies[.]" 8 C.F.R. § 214.2(f)(5)(*i*). F-1 students are entitled to participate in two types of practical training programs: Curricular Practical Training ("CPT") and Optional Practical Training ("OPT"). *See* 8 C.F.R. § 214.2(f)(10).

*SEVP & SEVIS.* U.S. Immigration and Customs Enforcement ("ICE"), a subagency of DHS, is responsible for the Student and Exchange Visitor Program ("SEVP"), which keeps records on F-1 students. *See generally* 8 U.S.C. § 1372 (requiring program to collect information). SEVP manages the Student and Exchange Visitor Information System (SEVIS) system, an internet-based database used to track and document the continuing status of noncitizen students who are authorized to be in the United States to study pursuant to an F-1 student visa or another study-related visa.

*Termination of F-1 Status*. F-1 students fail to maintain their particular status when they do not comply with the regulatory requirements of F-1 status, such as failing to maintain a full course of study without prior approval, engaging in unauthorized employment, or other violations of the requirements set forth in the Code of Federal Regulations at 8 C.F.R. § 214.2(f). DSOs at universities must report to SEVP, via SEVIS, when a student fails to maintain status. 8 C.F.R. § 214.3(g)(2).

F-1 students are also subject to the requirements for "maintenance of status" set forth in 8 C.F.R. § 214.1 that apply to several nonimmigrant classes, including F-1 students. Pertinent to the case at bar is subsection (g), which instructs that a nonimmigrant's admission and continued

stay in the United States is also conditioned on "obedience to all laws of United States jurisdictions which prohibit the commission of crimes of violence and for which a sentence of more than one year imprisonment may be imposed."  8 C.F.R. § 214.1(g).  "A nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status[.]"  *Id.*

Last, a student's F-1 status can also be terminated due to an agency "termination of status." In this regard, subsection (d) provides that "[w]ithin the period of initial admission or extension of stay, the nonimmigrant status of an alien shall be terminated [1] by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; [2] by the introduction of a private bill to confer permanent resident status on such alien; or, [3] pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d).

While a student *may* seek reinstatement of her status in SEVIS, a student is not required to do so.  More important, there is no grace period for an F-1 student who fails to maintain status to prepare for departure.  *See* 8 C.F.R. § 214.2(f)(5)(iv) ("An F-1 student who has completed a course of study and any authorized practical training following completion of studies will be allowed an additional 60-day period to prepare for departure from the United States or to transfer in accordance with paragraph (f)(8) of this section.… However, an F-1 student who fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status is not eligible for an additional period for departure.").

## B.  Factual Background

Plaintiffs Madan B K, Geran Gao, Pranil Titare, Kunzhe Song, Naga Manikanta Chigurupati, Aishwarya Shrestha, Srikanth Boppudi, Dhanush Pothugunta, Harshit Gazibanda, and Nag Izaaz Shaik are noncitizens who are students at public universities in Michigan, Ohio, Missouri, and Wisconsin.  Plaintiffs B K, Gao, and Song are currently pursuing their doctoral degrees (Verified Compl. ¶ 4).  Plaintiffs Titare, Chigurupati, Pothugunta, Boppudi, and Gazibanda are currently employed in one-year periods of Optional Practical Training (OPT) (*id.*). Plaintiff Shaik is set to begin his OPT (*id.*).  And Plaintiff Shrestha is employed in a two-year Science, Technology, Engineering and Math (STEM) OPT (*id.*).

On or about April 3, 2025, SEVP began to unilaterally amend the SEVIS records of numerous F-1 students, including Plaintiffs, to set their record designations as "terminated." *See* Andre Watson Decl. [ECF No. 10] ¶¶ 8, 10, 13, 17, 19, 22, 25, 28, 31, & 34.  Defendants assert that they "did not delete Plaintiffs from the SEVIS database or terminate their F-1 student status" (ECF No. 8 at PageID.184), an assertion that Plaintiffs characterize as "artful paltering" (ECF No. 12 at PageID.211).

Eight Plaintiffs—B K, Gao, Titare, Song, Chigurupati, Pothugunta, Shrestha, Boppudi, Gazibanda, and Shaik—learned from their schools that their F-1 SEVIS records were terminated (Emails, Pls. Exs. B–J & O [ECF No. 1-1 at PageID.48–68, & 81]).  The reason for termination, as recorded in SEVIS, was largely the same for each Plaintiff, to wit: "OTHERWISE FAILING TO MAINTAIN STATUS: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated" (*id.*).  Plaintiff Gao's terminated SEVIS record used slightly different prefatory language: "OTHER: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated" (Pls. Ex. B, ECF

5

No. 1-1 at PageID.49).    Plaintiff B K's terminated SEVIS record included the statement: "Terminated pursuant to INA 237(a)(1)(C)(i)/8 USC 1227(a)(1)(C)(i)" (Pls. Ex. C, ECF No. 1-1 at PageID.53).  Plaintiff Titare's e-mail from Western Michigan University gave no reason for the termination (Pls. Ex. D, ECF No. 1-1 at PageID.55).  Plaintiff Shrestha's e-mail from ICE-SEVP similarly provided no reason (Pls. Ex. H, ECF No. 1-1 at PageID.64).  The schools advised Plaintiffs to "stop working immediately" and/or consult with an attorney and/or make arrangements to leave the country "immediately" (Emails, Pls. Exs. B–J & O [ECF No. 1-1 at PageID.48–68, & 81]).

Plaintiffs indicate that they have each had contact with the criminal justice system (e.g., speeding tickets and dismissed charges) (Verified Compl. ¶¶ 52, 56, 60, 64, 68, 72, 76, 80, 84, & 88).    However, no Plaintiff has allegedly been convicted of a crime of violence for which a sentence of more than one year of imprisonment may be imposed, and no Plaintiff has allegedly violated any immigration laws (*id.* ¶ 5).[1]

## C.  Procedural Posture

On April 14, 2025, Plaintiffs filed a four-count Verified Complaint against Noem, in her official capacity as DHS Secretary; Todd Lyons, in his official capacity as Acting ICE Director; and Robert Lynch, in his official capacity as Field Office Director of Detroit–ICE.[2]  Plaintiffs'

---

[1] Plaintiffs indicate in their Verified Complaint that four Plaintiffs' visas have since been revoked. *See* 4/9/25 Notice to Shrestha, Pls. Ex. L (ECF No. 1-1 at PageID.74–75); 4/9/25 Notice to Pothugunta, Pls. Ex. M (ECF No. 1-1 at PageID.77); 4/1/25 Notice to Chigurupati, Pls. Ex. N (ECF No. 1-1 at PageID.79); 4/12/25 Notice to Shaik, Pls. Ex. P (ECF No. 1-1 at PageID.83).  Plaintiffs expressly do not challenge these visa revocations, only the termination of their F-1 student records in SEVIS (Verified Compl. ¶ 13).  The Court notes that Defendants have identified four more Plaintiffs whose visas have since been revoked.  *See* Watson Decl. ¶ 11 (Gao), ¶ 14 (Titare), ¶ 26 (Boppudi), and ¶ 32 (Gazibanda).

[2] Defendants briefly contend that venue does not properly lie in this district, given the individualized facts regarding Plaintiffs' status terminations (Defs. Resp., ECF No. 8 at PageID.196).  Venue is proper "in any judicial district in which ... the plaintiff resides[.]"  28

Complaint seeks only declaratory and injunctive relief.  On April 15, 2025, Plaintiffs filed an

Emergency Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction (ECF

No. 5).  This Court noticed oral argument on only Plaintiffs' TRO request and required a response

from Defendants (Order, ECF No. 6).  On April 18, 2025, Defendants filed a response to Plaintiffs'

request for a TRO (ECF No. 8), with a supporting declaration from Andre Watson, the "Senior

Official within the National Security Division (NSD) for Homeland Security Investigations (HSI)"

(ECF No. 10).  On April 21, 2025, Plaintiffs filed a reply to their response (ECF No. 12), attaching

a supporting declaration from Brian Childs, Ed.D., the Senior Director of the International Student

& Scholar Services Office of Western Michigan University (ECF No. 12-1).  On April 22, 2025,

this Court heard oral argument on the motion.

## II.  ANALYSIS

### A.  Motion Standard

The United States Supreme Court has instructed that temporary restraining orders "serv[e]

the [ ] underlying purpose of preserving the status quo and preventing irreparable harm just so long

as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Teamsters*, 415

U.S. 423, 439 (1974)).  The short duration of a TRO—no more than 14 days under Federal Rule

of Civil Procedure 65(b)(2)—is one of its chief distinctions from a preliminary injunction.  The

balancing process for the two types of injunctive relief is not identical, given their different

purposes and different evidentiary records, but courts consider "the same [four] factors considered

---

U.S.C. § 1391(e)(1)(C).  The Court of Appeals for the Sixth Circuit construes the phrase "the
plaintiff" in § 1391(e)(1)(C) to mean "any plaintiff."  *Sidney Coal Co. v. Soc. Sec. Admin.*, 427
F.3d 336, 345–46 (6th Cir. 2005).  *See, e.g., Arab Am. C.R. League v. Trump*, 399 F. Supp. 3d 717,
725 (E.D. Mich. 2019) ("Because all Plaintiffs other than Hend and Salim Alshawish are residents
of this District, venue is proper as to all Plaintiffs."), appeal dismissed and remanded, No. 19-2375,
2021 WL 9541602 (6th Cir. Feb. 10, 2021).  At this juncture, absent a more developed argument,
the Court declines to dismiss any Plaintiff based on improper venue.

in determining whether to issue a TRO or preliminary injunction." *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). Specifically, in the Sixth Circuit, courts consider "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Ohio v. Becerra*, 87 F.4th 759, 768 (6th Cir. 2023) (quoting *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc)).

These four factors are "not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citation omitted). "For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay." *Id.* Moreover, "if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." *ACLU of Kentucky v. McCreary Cnty.*, 354 F.3d 438, 445 (6th Cir. 2003) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)), aff'd sub nom. *McCreary Cnty. v. ACLU of Ky.*, 545 U.S. 844 (2005). The latter two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009) (but cautioning that the public interest is not "negligible"). Plaintiffs, the parties seeking the preliminary injunction, bear the burden of justifying the relief they seek. *See McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citing *Granny Goose Foods*, 415 U.S. at 441).

Rule 65(b)(1)(A) provides that in deciding whether to issue a temporary restraining order a court may rely on "specific facts in an affidavit or a verified complaint." FED. R. CIV. P. 65(b)(1)(A). Rule 65 further instructs that "every restraining order must: (A) state

the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—

and not by referring to the complaint or other document—the act or acts restrained or required."

FED. R. CIV. P. 65(d)(1).  *See also* FED. R. CIV. P. 52(a)(2) (indicating that in granting or refusing

an interlocutory injunction, the court must state "the findings and conclusions that support its

action").  Last, a court's order "binds only the following who receive actual notice of it by personal

service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and

attorneys; and (C) other persons who are in active concert or participation with anyone described

in Rule 65(d)(2)(A) or (B)."  FED. R. CIV. P. 65(d)(2).

## B.  Discussion of Relevant Factors

1.    Likelihood of Success on the Merits

Plaintiffs' motion for injunctive relief is predicated on the merits of its claims in Counts 1

and 2.  *See* Pls. Mot., ECF No. 5 at PageID.124–128.  To satisfy the first factor in the injunction

analysis, the "strong likelihood of success on the merits," the Sixth Circuit has held that "[i]t is

ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial,

difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate

investigation."  *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372, 385 (6th Cir. 2023) (citation

omitted).

The Court turns first to the merits of Plaintiffs' APA claim in Count 2.  There, Plaintiffs

allege that Defendants' termination of their F-1 student records in SEVIS violated the

Administrative Procedure Act ("APA") and should be set aside pursuant to 5 U.S.C. § 706(2) as

arbitrary, capricious, an abuse of discretion, contrary to constitutional right, contrary to law, or in

excess of statutory jurisdiction (Verified Compl. ¶ 102).  Plaintiffs allege that under 8 C.F.R.

§ 214.1(d), Defendants have no statutory or regulatory authority to terminate their F-1 student

records in SEVIS (*id.* ¶ 103).  The government makes three threshold arguments why this Court may not properly consider the merits of Plaintiffs' APA claim.

   ***Sovereign Immunity.***  First, the government contends that this Court lacks jurisdiction over Plaintiffs' APA challenge because the government has not waived its sovereign immunity where another statute—the Privacy Act—forbids Plaintiffs, as noncitizens, from seeking any relief (Defs. Resp., ECF No. 8 at PageID.190–191).

   The APA waives sovereign immunity for actions in federal district court by "person[s] suffering legal wrong because of agency action." 5 U.S.C. § 702.  That waiver, however, is subject to three limitations: (1) the plaintiff must "seek[ ] relief other than money damages"; (2) the plaintiff must have "no other adequate remedy"; and (3) the plaintiff's action must not be "expressly or impliedly forbid[den]" by "any other statute."  5 U.S.C. §§ 702, 704.  Defendants rely on the provision in the Privacy Act that limits remedies therein to "citizen[s]" and persons "lawfully admitted for permanent residence[.]"  5 U.S.C. § 552a(a)(2).

   However, "Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA."  *All. for Retired Americans v. Bessent*, No. CV 25-0313 (CKK), 2025 WL 740401, at \*19 (D.D.C. Mar. 7, 2025) (concluding that the availability of a Privacy Act suit for damages did not take the plaintiffs' case outside the scope of the waiver of sovereign immunity in § 702 of the APA and did not affect subject-matter jurisdiction over the plaintiffs' APA claims). Plaintiffs are not challenging an unauthorized disclosure of any confidential information and their APA claim would not be remedied as such.  *See generally Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1245 (D.C. Cir. 2017) (explaining that the adequacy of the alternative relief available must offer the "same genre" of relief in order to have preclusive

effect).  *Cf. Doe v. Noem*, No. 2:25-cv-01103, 2025 WL 1134977, at *4 (E.D. Cal. Apr. 17, 2025)

(rejecting the defendants' argument that the plaintiff's claims are prohibited by the second

limitation, that "[t]he Privacy Act provides an alternative, adequate remedy to the APA").

Therefore, the Court is not presently persuaded that the Privacy Act expressly or impliedly forbids

this Court's review of Plaintiffs' APA claims.

      *Final Agency Action.*  The government argues that this Court also lacks jurisdiction to

consider Plaintiffs' APA claim because the change to their SEVIS records is not a final agency

action regarding the student's nonimmigrant status (Defs. Resp., ECF No. 8 at PageID.191–193;

Watson Decl. ¶ 37).  Section 704 of the APA provides for judicial review of "[a]gency action made

reviewable by statute and final agency action for which there is no other adequate remedy in a

court."  5 U.S.C. § 704.  The Supreme Court has instructed that for agency action to be deemed

final, the action must (1) "mark the consummation of the agency's decision[-]making process,"

and (2) "the action must be one by which rights or obligations have been determined, or from

which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal

quotation marks omitted).  The action must not be of a "merely tentative or interlocutory nature."

*Id.* at 178.

      Here, the termination of Plaintiffs' SEVIS records is an agency action that implicates

"rights and obligations" and from which "legal consequences" flow, for the reasons discussed

more fully, *infra*, with regard to Plaintiffs' alleged irreparable injuries.  And, second, the action

appears to constitute the consummation of the agency's decision-making process.  Again, as noted,

there is no statutory or regulatory requirement that a student seek reinstatement of student status

in SEVIS.  Even if a student attempts to pursue the administrative procedure for SEVIS

reinstatement, there is no "mechanism to review the propriety" of the original termination.  *Doe v.*

*Noem*, No. 2:25-cv-633-DGE, 2025 WL 1141279, at *3 (W.D. Wash. Apr. 17, 2025) (citing, in pertinent part, 8 C.F.R § 214.2(f)(16)(*ii*) ("The adjudicating officer will update SEVIS to reflect [the] decision [by U.S. Citizenship and Immigration Services ("USCIS")].  If USCIS does not reinstate the student, the student may not appeal the decision.").  Because neither immigration judges nor the Board of Immigration Appeals (BIA) have the authority to review SEVIS termination or a USCIS denial of reinstatement, there is no proceeding in which a student can contest the agency action at issue here.  *Id.*

Therefore, the Court rejects the government's position that changing Plaintiffs' F-1 student status in SEVIS to "terminated" was a decision of a "merely tentative or interlocutory nature." Rather, this Court, like other courts, preliminarily concludes that the termination was a unilateral determination with immediate legal consequences over which Plaintiffs have no ability to seek administrative review.  *See*, *e.g.*, *Hinge v. Lyons*, No. CV 25-1097, 2025 WL 1134966, at *1 (D.D.C. Apr. 15, 2025) ("[T]he record at this stage seems to indicate that final agency action has occurred[.]"); *Patel v. Bondi*, No. 1:25-CV-00101, 2025 WL 1134875, at *2 (W.D. Pa. Apr. 17, 2025) ("The SEVIS termination is a final agency decision susceptible to judicial review."); *Doe*, 2025 WL 1141279, at *3 (reaching the same conclusion for the reasons stated herein). Accordingly, this Court concludes that it possesses jurisdiction over the subject matter of Plaintiffs' APA claims.

***Administrative Remedies.***  Third, the government briefly asserts in a couple of sentences that this Court may not consider the merits of Plaintiffs' APA claims because Plaintiffs have not exhausted their administrative remedies for their claims by, for example, "submit[ing] requests to the agency to have their records amended" (Defs. Resp., ECF No. 8 at PageID.191).  However, as the Sixth Circuit has explained, "exhaustion may not be required when the administrative remedy

12

'does not serve the purposes behind the exhaustion doctrine[ ],' if the 'administrative remedies are inadequate or not efficacious,' or 'where pursuit of administrative remedies would be a futile gesture.'" *Shearson v. Holder*, 725 F.3d 588, 594 (6th Cir. 2013) (citation omitted).  Moreover, "[e]xhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures." *Id.*  Absent a more developed argument, the Court does not consider exhaustion an impediment to Plaintiffs' APA claims.

*Merits.*  Turning then to the merits of Plaintiffs' APA claim in Count 2, Plaintiffs allege that "nothing in Plaintiffs' criminal histories, academic records, or any other applicable history or record provides a statutory or regulatory basis for termination of Plaintiffs' records in SEVIS, or even for determining that any of the Plaintiffs have failed to maintain their F-1 status" (Verified Compl. ¶ 103).  The government agreed at oral argument that Plaintiffs did not lose status under 8 C.F.R. § 214.1(g) for a qualifying conviction.  Moreover, the current record reveals no facts supporting an agency-initiated termination of status under the three circumstances delineated in 8 C.F.R. § 214.1(d), as follows:

1) the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act;

2) the introduction of a private bill to confer permanent resident status on such alien; or,

3) pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons.

8 C.F.R. § 214.1(d).  Hence, Plaintiffs have identified legal and factual bases for their APA claim that provide fair grounds for litigation and more deliberate investigation.  *See Ratsantiboon v. Noem*, No. 25-CV-01315, 2025 WL 1118645, at *2 (D. Minn. Apr. 15, 2025) ("An agency's unexplained refusal to follow its own regulations effecting individuals' procedural benefits poses

a high probability that the agency is not acting in accordance with the APA.") (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954)).

Because Plaintiffs have demonstrated a sufficient likelihood of success on the merits of their APA claim, this Court, like other district courts in similar postures reaching the same result, will not yet reach the merits of Plaintiffs' due process claim. *See, e.g.*, *Doe*, 2025 WL 1134977, at *6, n.2 (deciding the merits of the plaintiffs' APA claim, only, supported issuance of TRO); *Roe v. Noem*, No. CV 25-40-BU-DLC, 2025 WL 1114694, at *3 (D. Mont. Apr. 15, 2025) (same); *Liu v. Noem*, No. 25-cv-133-SE (N.H. Apr. 10, 2025) (same); *Saxena v. Noem*, No. 5:25-CV-05035-KES, 2025 WL 1149498, at *2 n.2 (D.S.D. Apr. 18, 2025) (same).

2.    Irreparable Injury Without an Injunction

Turning next to the second factor, the Sixth Circuit has recently reiterated that "'irreparable' means 'not fully compensable by monetary damages.'" *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, No. 24-3211, ___F.4th ___, 2025 WL 1099086, at *12 (6th Cir. Apr. 14, 2025). Defendants repeatedly emphasized in briefing and at oral argument that SEVP does not have the authority to terminate an F-1 student's nonimmigrant status by terminating the student's SEVIS record. Nonetheless, Plaintiffs described at oral argument and in their written submissions several forms of irreparable harm that flow from the record termination itself, such as—

- being immediately put on leave from their lawfully held post-completion OPT and STEM OPT employment positions,

- being unable to complete and defend their dissertations,

- being unable to transfer their SEVIS records to new institutions,

- facing loss of their employment,

- facing loss of future OPT employment positions due to falling out of status,

- facing the inability to attend classes, and

14

- facing severe risk of immediate arrest and detention for removal (deportation) because they are no longer in lawful nonimmigrant status

*See* Verified Compl. ¶ 91; Pls. Motion, ECF No. 5 at PageID.121 & 129; *see also* Childs Decl. ¶ 30 (declaring that "it has always been clear that once an F-1 student's record in SEVIS is terminated, regardless of the reason, that student immediately loses all on- and off-campus employment authorization based on their F-1 nonimmigrant status," including CPT, OPT and STEM–OPT) and ¶ 34 (declaring that "students are not able to leave and re-enter the United States on a terminated SEVIS record" and that ICE "may investigate to confirm the student has departed") The loss of timely academic progress, whether such progress is accomplished in preparing a dissertation or gaining practical work experience, is simply not compensable by money damages. Additionally, Plaintiffs' uncertain legal status constitutes a separate and irreparable harm.

On the latter harm, Defendants opine that the risk of arrest or deportation is merely "speculative" (Defs. Resp., ECF No. 8 at PageID.195), but that opinion alone is not especially reassuring.  *See*, *e.g.*, *Ozturk v. Trump*, No. 25-CV-10695-DJC, 2025 WL 1009445, at *1 (D. Mass. Apr. 4, 2025) ("[W]ithout prior notice of the revocation of her student visa or the grounds asserted for same, Ozturk, a graduate student in Child Study and Human Development at Tufts University, was approached and surrounded by six officers (several wearing masks and/or hoods), stripped of her cellphone and backpack, handcuffed, and taken into custody in an unmarked vehicle."). Indeed, Defendants could not explain, to the Court's satisfaction, how Plaintiffs with "terminated" SEVIS records would demonstrate their legal status, if questioned.

Defendants also assert that the consequences to Plaintiffs resulting from the change in their SEVIS records to "terminated" are avoidable inasmuch as Plaintiffs can "transfer their credits to universities in their home country or in other comparable countries, such as Canada, or in Europe"

(Defs. Resp., ECF No. 8 at PageID.195).  But Plaintiffs are not required to eliminate all alternative career paths in order to meet their burden under this factor.

In short, given the current record before the Court, the Court finds that Plaintiffs have borne the burden of persuading the Court that they will suffer irreparable injury absent a TRO.

3.        Balancing of Equities & Public Interest

Last, the Court finds that granting the requested interim relief will not cause Defendants substantial harm and that the public interest will be served.  Defendants contend that the balance of harms and the public interest weigh in favor of "the Executive's ability to enforce immigration laws" (Defs. Resp., ECF No. 8 at PageID.196), but neither Defendants nor the public have a legitimate interest in enforcing unconstitutional or unlawful actions.  *See generally Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010) ("When a constitutional violation is likely, . . . the public interest militates in favor of injunctive relief because it is always in the public interest to prevent violation of a party's constitutional rights.").

In sum, this Court, like numerous other district courts[3], determines that the balance of factors weighs in favor of granting temporary injunctive relief until this Court hears from the parties on the propriety of the terms of a preliminary injunction, if any, and has the benefit of a more complete record.  Granting emergency relief will merely maintain the status quo that has been in place for the several years that Plaintiffs have been in the United States as F-1 students and employees.

---

[3] As catalogued by Plaintiffs (Pls. Reply, ECF No. 12 at PageID.211), at least 23 federal district courts since April 11, 2025 have considered temporary restraining orders in similar cases of SEVIS record terminations, and the overwhelming majority have granted temporary relief to a greater or lesser extent.

**C.  Security**

Federal Rule of Civil Procedure 65(d) states that "no restraining order of preliminary injunction shall issue except upon the giving of security by the applicant ...." FED. R. CIV. P. 65(d). "While ... the language of Rule 65(d) appears to be mandatory, and many circuits have so interpreted it, the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security." *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978); *Urbain v. Knapp Bos. Mfg. Co.*, 217 F.2d 810, 815-16 (6th Cir. 1954)).  In their written submissions to this Court, Defendants did not identify any purpose that requiring a security would serve.  The Court therefore waives the security requirement of Rule 65(d).

### III.  CONCLUSION

Accordingly, for the reasons stated on the record on April 22, 2025 and herein,

**IT IS HEREBY ORDERED**, in the Court's discretion, that Plaintiffs' request for a Temporary Restraining Order (ECF No. 5) is GRANTED.  A Temporary Restraining Order consistent with this Opinion and Order will separately issue.

**IT IS FURTHER ORDERED** that Defendants shall file a Response to Plaintiffs' request for a preliminary injunction (ECF No. 5) not later than April 29, 2025.  Any Reply shall be filed not later than May 2, 2025.

**IT IS FURTHER ORDERED** that the parties shall, not later than May 2, 2025, file a Joint Notice indicating the expected duration of presentations of evidence, if any, including the names of anticipated witnesses, if any.

**IT IS FURTHER ORDERED** that an Evidentiary Hearing, if necessary, shall be held on the request for a preliminary injunction on **May 6, 2025 at 10:00 a.m.** before the Honorable Jane M. Beckering, 601 Federal Building, 110 Michigan Ave., N.W., Grand Rapids, Michigan 49503.


Dated:  April 23, 2025                                    /s/ Jane M. Beckering
                                                      JANE M. BECKERING
                                                      United States District Judge