UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MADAN B K, GERAN GAO, PRANIL
TITARE, KUNZHE SONG, NAGA
MANIKANTA CHIGURUPATI,
AISHWARYA SHRESTHA, SRIKANTH
BOPPUDI, DHANUSH POTHUGUNTA,
HARSHIT GAZIBANDA, NAG IZAAZ
SHAIK, AVINASH KOMMULA, MADHURI
YADAV CHEKUTTY, SHANMUKHA
SRINIVAS RALI, SALAM ALAJAMI, RITA
MAWUENA KPORMEGO, GUANHUA
YAO, AJAY TIMALSINA, DONGFANG JI,
RONIT RAJESH SHETTY, SARJIB KARKI,
TSHAINA MUTAMBA, SARAH QIYU
TAY, ZHENG DONG, SHARANYA
JAVVAJI, SRUJANA PAMIDIMUKKALA,
NIKHIL GAZIBANDA, ESHIKA SINGH,
TEJA SRI KOTIPALLI, MANNRAJ SINGH,
YUMU ZHONG, and MUHAMMAD
SHAHROZ SABIR,

Case No. 1:25-cv-419

HON. JANE M. BECKERING

   Plaintiffs,

v.

KRISTI NOEM, et al.,

   Defendants.
_____/

**OPINION AND ORDER**

   Plaintiffs are thirty-one international students or recent graduates who, like many others across the nation, abruptly received notice from their educational institutions that the government records used to document their legal nonimmigrant status in the United States had been terminated by the Department of Homeland Security (DHS). This Court issued a Temporary Restraining Order on April 22, 2025 and now turns to Plaintiffs' request for a preliminary injunction (ECF No.

5), which has been fully briefed. The Court also conducted hearings in this matter on April 22, 2025 and May 6, 2025. Upon review of the current record and the written and oral arguments of the parties, the Court grants Plaintiffs' request for a preliminary injunction for the reasons stated on the record and more fully herein.

## I.  BACKGROUND

### A.  Legal Context

As previously indicated in this Court's Opinion and Order granting temporary injunctive relief (ECF No. 19 at PageID.553–555), several key terms are important to understanding the legal context of this case.

***F-1 & M-1 Visas.*** Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(15)(F)(i) and (M)(i), a noncitizen can enroll in a government-approved academic institution as an F-1 nonimmigrant student or in a vocational or other recognized nonacademic institution as an M-1 nonimmigrant student. *See* 8 C.F.R. § 214.1(a)(2) (delineating classification designations, including "F-1" and "M-1"). The United States Department of State is the entity charged with issuing F-1 and M-1 nonimmigrant visas to admitted international students. A visa, while a critical document, does not govern how long a student may stay in the United States.

***F-1 & M-1 Status.*** Once students enter the United States, they are issued an I-94 Arrival/Departure Record that reflects their F-1 student or M-1 vocational *status*. They are permitted to remain in the United States for their particular duration of status ("D/S"). "Duration of status" is defined, in general, as "the time during which an F-1 student is pursuing a full course of study at an educational institution certified [] for attendance by foreign students, or engaging in authorized practical training following completion of studies[.]" 8 C.F.R. § 214.2(f)(5)(*i*).

F-1 students are also entitled to participate in two types of post-completion practical training programs: Curricular Practical Training ("CPT") and Optional Practical Training ("OPT"). *See id.* § 214.2(f)(10)(i) & (ii). Students may also qualify for a "24–month extension of post-completion OPT for a science, technology, engineering, or mathematics (STEM) degree." *Id.* § 214.2(f)(10)(ii)(C). In this regard, "duration of status" is defined as "the period beginning on the date that the student's application for OPT was properly filed and pending approval, including the authorized period of post-completion OPT, and ending 60 days after the OPT employment authorization expires." 8 C.F.R. § 214.2(f)(10)(D).

A student in M-1 nonimmigrant status is admitted for a "fixed time period," which is defined as "the period necessary to complete the course of study indicated [], plus practical training following completion of the course of study, plus an additional 30 days to depart the United States, but not to exceed a total period of one year." 8 C.F.R. § 214.2(m)(5).

**SEVP & SEVIS.** The United States Immigration and Customs Enforcement ("ICE"), a subagency of DHS, is responsible for the Student and Exchange Visitor Program ("SEVP"), which keeps records on F-1 students. *See generally* 8 U.S.C. § 1372 (requiring the creation of a program to "collect … information"). SEVP manages the Student and Exchange Visitor Information System (SEVIS) system, an internet-based database used to track and document the continuing status of noncitizen students who are authorized to be in the United States to study pursuant to F-1 and M-1 student visas or other study-related visas. Institutions that obtain formal approval from DHS to sponsor F-1 and M-1 students must keep records containing certain information and documents relating to each student. *See generally* 8 C.F.R. § 214.3 (Certification and recertification of schools for enrollment of F and M nonimmigrants), and, more specifically,

3

§ 214.3(g)(1) (Recordkeeping and reporting requirements). A Designated School Official ("DSO") monitors, advises, and oversees the students attending that institution.

***Termination of Status***. F-1 and M-1 students fail to maintain their particular status when they do not comply with the requirements set forth in the Code of Federal Regulations in 8 C.F.R. § 214.2(f) or § 214.2(m) that govern their particular visa classification. For example, F-1 and M-1 students must maintain a full course of study. *See* §§ 214.2(f)(6) & (m)(9). DSOs must report to SEVP, via SEVIS, when a student fails to maintain status. 8 C.F.R. § 214.3(g)(2) (Reporting changes in student and school information).

The students are also subject to the general requirements for "maintenance of status" set forth in 8 C.F.R. § 214.1 that apply to several nonimmigrant classes, including F-1 and M-1 students. Pertinent to the case at bar is subsection (g), which instructs that a nonimmigrant's admission and continued stay in the United States is also conditioned on "obedience to all laws of United States jurisdictions which prohibit the commission of crimes of violence and for which a sentence of more than one year imprisonment may be imposed." 8 C.F.R. § 214.1(g). "A nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status[.]" *Id.*

Last, a student's F-1 or M-1 status can also be terminated due to an agency "termination of status." In this regard, subsection (d) provides that "[w]ithin the period of initial admission or extension of stay, the nonimmigrant status of an alien shall be terminated [1] by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; [2] by the introduction of a private bill to confer permanent resident status on such alien; or, [3] pursuant to

4

notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d).

The termination of a student's status can have a cascading effect. For example, a student's off-campus employment authorization is "automatically terminated whenever the student fails to maintain status." *Id.* § 214.2(f)(9)(2). Additionally, during post-completion OPT, F-1 status is dependent upon employment. In general, OPT students "may not accrue an aggregate of more than 90 days of unemployment during any post-completion OPT period." *Id.* § 214.2(f)(10)(ii)(E). Students in STEM-OPT "may not accrue an aggregate of more than 150 days of unemployment during a total OPT period." *Id.* Last, per current DHS guidance, a student with a terminated SEVIS record "cannot re-enter the United States," and ICE may "investigate to confirm the departure of the student." *See* https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student [https://perma.cc/5C5F-K7HN].

While a student *may* seek reinstatement of her status in SEVIS, a student is not required to do so. More important, there are no grace periods for F-1 and M-1 students who fail to maintain status to prepare for departure. *See* 8 C.F.R. § 214.2(f)(5)(iv) ("An F-1 student who has completed a course of study and any authorized practical training following completion of studies will be allowed an additional 60-day period to prepare for departure from the United States or to transfer in accordance with paragraph (f)(8) of this section.… However, an F-1 student who fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status is not eligible for an additional period for departure."). Likewise, "[a]n M-1 student who fails to maintain a full course of study or otherwise fails to maintain status is not eligible for the additional 30-day period of stay." *Id.* § 214.2(m)(5).

## B. Factual Background

Plaintiffs Madan B K, Geran Gao, Pranil Titare, Kunzhe Song, Naga Manikanta Chigurupati, Aishwarya Shrestha, Srikanth Boppudi, Dhanush Pothugunta, Harshit Gazibanda, Nag Izaaz Shaik, Avinash Kommula, Madhuri Yadav Chekutty, Shanmukha Srinivas Rali, Salam Alajami, Rita Mawuena Kpormego, Guanhua Yao, Ajay Timalsina, Dongfang Ji, Ronit Rajesh Shetty, Sarjib Karki, Tshaina Mutamba, Sarah Qiyu Tay, Zheng Dong, Sharanya Javvaji, Srujana Pamidimukkala, Nikhil Gazibanda, Eshika Singh, Teja Sri Kotipalli, Mannraj Singh, Yumu Zhong, and Muhammad Shahroz Sabir are F-1 and M-1 nonimmigrants either attending or recently graduated from universities or vocational programs in Michigan, as well as Illinois, Iowa, Missouri, New Hampshire, Ohio, Pennsylvania, Texas, Utah, and Wisconsin.

Plaintiffs Tay and Dong are F-1 undergraduate students (Am. Compl.[1] [ECF No. 22] ¶¶ 42–43). Plaintiff Timalsina is an M-1 vocational student (*id.* ¶ 37). Plaintiffs Titare, Shaik, Gazibanda, and Sabir are F-1 nonimmigrant students pursuing their graduate degrees (Am. Compl. ¶¶ 23, 30, & 46; Joinder [ECF No. 32] ¶ 2). Plaintiffs B K, Gao, Song, Yao, Ji, and Shetty are F-1 nonimmigrant students pursuing their doctoral degrees (Am. Compl. ¶¶ 21–22, 24, & 38–39). Plaintiffs Chigurupati, Boppudi, Chekutty, Alajami, Kpormego, Mutamba, Javvaji, Kotipalli, Eshika Singh, and Mannraj Singh are currently participating in F-1 OPT (*id.* ¶¶ 25, 28, 29, 32, 34–35, 41, 44, & 47–49). Plaintiffs Pothugunta, Shrestha, Kommula, Rali, Karki, Pamidimukkala, and Zhong are currently participating in F-1 STEM OPT (*id.* ¶¶ 26–27, 31, 33, 40, 45, & 50).

On or about March 28, 2025, SEVP began to unilaterally amend the SEVIS records of numerous F-1 and M-1 students, including Plaintiffs, to set their record designations as

---

[1] Plaintiffs refer to their Amended Complaint as a "Verified" amended complaint and promised therein the filing of supporting declarations, *see* ECF No. 22 at PageID.579 n.7; however, no declarations have been filed to date.

"terminated." *See* Andre Watson Decl. [ECF No. 10] ¶¶ 8, 10, 13, 17, 19, 22, 25, 28, 31, & 34; Brian Childs, Ed.D. Updated Decl. [ECF No. 39] ¶ 17.[2] Defendants assert that they "did not delete Plaintiffs from the SEVIS database or terminate their F-1 student status" (Defs. Resp., ECF No. 8 at PageID.184), an assertion that Plaintiffs characterize as "artful paltering" (Pls. Reply, ECF No. 12 at PageID.211).

Instead of being notified by DHS or another government agency, most Plaintiffs received an email from their respective schools informing them that the school learned during their periodic check of SEVIS records that the respective Plaintiff's student status had been terminated (Am. Compl. ¶¶ 8–9). The reason for termination, as recorded in SEVIS, was largely the same for each Plaintiff, to wit: "OTHERWISE FAILING TO MAINTAIN STATUS: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated" (Emails, Pls. Exs. B–J & O [ECF No. 1-1 at PageID.48–68, & 81]). The schools advised Plaintiffs to "stop working immediately" and/or consult with an attorney and/or make arrangements to leave the country "immediately" (*id.*).

Plaintiffs indicate that they have each had contact with the criminal justice system (e.g., speeding tickets and dismissed charges); however, no Plaintiff has been convicted of a crime of violence for which a sentence of more than one year of imprisonment may be imposed (Am.

---

[2] Plaintiffs have indicated that four Plaintiffs' visas have also since been revoked. *See* 4/9/25 Notice to Shrestha, Pls. Ex. L (ECF No. 1-1 at PageID.74–75); 4/9/25 Notice to Pothugunta, Pls. Ex. M (ECF No. 1-1 at PageID.77); 4/1/25 Notice to Chigurupati, Pls. Ex. N (ECF No. 1-1 at PageID.79); 4/12/25 Notice to Shaik, Pls. Ex. P (ECF No. 1-1 at PageID.83). Plaintiffs expressly do not challenge these visa revocations, only the termination of their F-1 student records in SEVIS (Am. Compl. ¶ 13). The Court notes that Defendants have identified four more Plaintiffs whose visas have since been revoked. *See* Watson Decl. ¶ 11 (Gao), ¶ 14 (Titare), ¶ 26 (Boppudi), and ¶ 32 (Gazibanda).

Compl. ¶¶ 21–50; Joinder ¶ 3). Plaintiffs further allege that they have not violated any immigration laws (Am. Compl. ¶¶ 6, 21–50; Joinder ¶ 3).

### C. Procedural Posture & Additional Post-Filing Facts

This case was initiated on April 14, 2025 against Kristi Noem, in her official capacity as DHS Secretary; Todd Lyons, in his official capacity as Acting ICE Director; and Robert Lynch, in his official capacity as Field Office Director of Detroit–ICE (ECF No. 1). Plaintiffs, who amended their original Complaint to add more affected students (ECF Nos. 22 & 33)[3], allege four claims. Counts 1 and 4 allege that the Department's action was contrary to the Due Process Clause of the United States Constitution. Counts 2 and 3 allege that the Department's action violated the Administrative Procedure Act because it was arbitrary, capricious, and contrary to law. Plaintiffs seek only declaratory and injunctive relief.

On April 15, 2025, Plaintiffs filed an Emergency Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 5). This Court noticed oral argument on the request for a temporary restraining order (TRO) and required a response from Defendants (Order, ECF No. 6). On April 18, 2025, Defendants filed a response to Plaintiffs' request for a TRO (ECF No. 8), with a supporting declaration from Andre Watson, the "Senior Official within the National Security Division (NSD) for Homeland Security Investigations (HSI)" (ECF No. 10). On April 21, 2025, Plaintiffs filed a reply to Defendants' response (ECF No. 12), attaching a supporting declaration from Brian Childs, Ed.D., the Senior Director of the International Student & Scholar Services Office of Western Michigan University (WMU) (ECF No. 12-1). On April 22, 2025, this Court heard oral argument on the request for a temporary restraining order.

---

[3] The original Complaint was filed by ten Plaintiffs (ECF No. 1). Twenty more Plaintiffs were added via a First Amended Complaint (ECF No. 22), and one more Plaintiff via Joinder (Order, ECF No. 33).

On April 23, 2025, this Court issued a Temporary Restraining Order (ECF No. 20), for the reasons set forth in the accompanying Opinion and Order (ECF No. 19).  In pertinent part, this Court required the student record termination decisions to be set aside and the records to be restored, retroactive to the date of termination (ECF No. 20).  This Court further required that the student records not be terminated absent a valid ground for termination and prohibited Defendants from revoking Plaintiffs' OPT employment authorizations (*id.*).  Last, this Court prohibited Defendants from arresting, detaining, or transferring Plaintiffs or initiating removal proceedings against or deporting any Plaintiff based on the termination of their student records in SEVIS (*id.*).  This Court's Order required further briefing on the matter of a preliminary injunction and noticed an evidentiary hearing for May 6, 2025 (*id.*).

On April 26, 2025, ICE issued a "Broadcast Message" to "[a]ll SEVP Personnel" relevant to SEVIS records.  The new policy delineates a non-exhaustive list of ten reasons that SEVP can use to terminate SEVIS records, including, in pertinent part:  "Evidence of a Failure to Comply with the Terms of Nonimmigrant Status Exists" and "U.S. Department of State Visa Revocation (Effective Immediately)" (ICE Policy, ECF No. 25-1 at PageID.619–620).

On April 29, 2025, Defendants filed their response to Plaintiffs' request for a preliminary injunction (ECF No. 26).  Plaintiffs filed a reply to the response (ECF No. 37).

Additionally, Plaintiffs filed two motions requesting orders to show cause.  The first motion (ECF No. 23), which related to Defendants' initial compliance with the Temporary Restraining Order, was subsequently withdrawn after Plaintiffs represented that their SEVIS records were "restored by 5:00 p.m. on Friday, April 25, 2025" (ECF No. 24 at PageID.614).  In their second motion (ECF No. 28, as corrected by ECF No. 31), Plaintiffs indicate that as of May 1, 2025, their

9

records "still indicate a period of 'Terminated' status between the time their records were originally terminated and when they were reactivated" (*id.* at PageID.649).

On May 5, 2025, Defendants filed a response to Plaintiffs' second motion (ECF No. 41) with a supporting declaration from James Hicks, the SEVP Division Chief of External Operations (Hicks Decl. [ECF No. 41-1]). Hicks attests that "for each plaintiff(s) in this case, SEVP has set their SEVIS record back to 'active'" (*id.* ¶ 3). Hicks indicates that, due to the technical limitations of the SEVIS system, the "event history for a given record cannot be deleted from the system" (*id.*). According to Hicks, SEVP added a notation to each record indicating that the student's record had been restored retroactively to the original date of the termination, as ordered by this Court, although he conceded that the notations are not viewable to end-users outside of SEVP, such as DSOs (*id.* ¶ 4).

Indeed, in an Updated Declaration from Dr. Childs also filed on May 5, 2025 (ECF No. 39), Dr. Childs indicates that the records of the affected WMU students continue to indicate an accumulation of out-of-status dates (*id.* ¶ 14 [B K–21 days], ¶ 15 [Gao–15 days], ¶ 16 [Tay–16 days], ¶ 17 [Sabir–27 days], ¶ 18 [Shetty–18 days], ¶ 19 [Eshika Singh–16 days], ¶ 20 [Mannraj Singh–16 days], and ¶ 21 [Titare–21 days]).

At the May 6, 2025 hearing, Plaintiffs relied on Dr. Child's Updated Declaration. The government did not present any evidence.

## II. ANALYSIS

### A. Motion Standard

"[T]he purpose of a preliminary injunction 'is simply to preserve the status quo.'" *Towerco 2013, LLC v. Berlin Twp. Bd. of Trs.*, 110 F.4th 870, 879–80 (6th Cir. 2024) (citation omitted). The balancing process for analyzing requests for temporary and preliminary injunctive relief is not

10

identical, given their different purposes and different evidentiary records, but courts consider "the same [four] factors considered in determining whether to issue a TRO or preliminary injunction." *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008).  Specifically, in the Sixth Circuit, courts consider "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction."  *Ohio v. Becerra*, 87 F.4th 759, 768 (6th Cir. 2023) (quoting *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc)).

These four factors are "not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (citation omitted).  "For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay." *Id.*  Moreover, "if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated." *ACLU of Kentucky v. McCreary Cnty.*, 354 F.3d 438, 445 (6th Cir. 2003) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)), aff'd sub nom. *McCreary Cnty. v. ACLU of Ky.*, 545 U.S. 844 (2005).  The latter two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009) (but cautioning that the public interest is not "negligible").  Plaintiffs, the parties seeking the preliminary injunction, bear the burden of justifying the relief they seek.  See *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citing *Granny Goose Foods*, 415 U.S. at 441).

Rule 65 jurisprudence in the Sixth Circuit indicates that an evidentiary hearing is "only required when there are disputed factual issues, and not when the issues are primarily questions of law." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552–53 (6th Cir. 2007) (collecting cases). No hearing is required where the court has before it "adequate documentary evidence upon which to base an informed, albeit preliminary, conclusion" that the plaintiff would prevail on the merits. *Id.* at 553.

In granting or refusing an interlocutory injunction, the court must state "the findings and conclusions that support its action." FED. R. CIV. P. 52(a)(2). However, "findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits." *Towerco*, 110 F.4th at 880 (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

Last, Federal Rule of Civil Procedure 65 instructs that "every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." FED. R. CIV. P. 65(d)(1). The court's order "binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." FED. R. CIV. P. 65(d)(2).

### B. Discussion of Relevant Factors

1. <u>Likelihood of Success on the Merits</u>

Plaintiffs' motion for injunctive relief is predicated on the merits of their claims in Counts 1 and 2. *See* Pls. Mot., ECF No. 5 at PageID.124–128. To satisfy the first factor in the injunction analysis, the "strong likelihood of success on the merits," the Sixth Circuit has held that "[i]t is

ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372, 385 (6th Cir. 2023) (citation omitted).

This Court previously rejected Defendants' arguments why this Court could not properly reach the merits of Plaintiffs' APA claim in Count 2, and this Court concluded that Plaintiffs had identified legal and factual bases for their APA claim that provide fair grounds for litigation and more deliberate investigation. *See* 4/23/2025 Op. & Or. (ECF No. 19 at PageID.560–565). To briefly reiterate, Plaintiffs allege in Count 2 that nothing in their "criminal histories, academic records, or any other applicable history or record provides a statutory or regulatory basis for termination of Plaintiffs' records in SEVIS, or even for determining that any of the Plaintiffs have failed to maintain their F-1 status" (Am. Compl. ¶ 83). The government agreed at oral argument on April 22, 2025 that Plaintiffs did not lose status under 8 C.F.R. § 214.1(g) for a qualifying conviction. And the current record reveals no facts supporting an agency-initiated termination of status under the three circumstances delineated in 8 C.F.R. § 214.1(d), as follows:

1) the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act;

2) the introduction of a private bill to confer permanent resident status on such alien; or,

3) pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons.

8 C.F.R. § 214.1(d).

At oral argument on May 6, 2025, Defendants argued that the general authority that Congress conferred under 8 U.S.C. § 1372 to "develop and conduct a program to collect … information" about nonimmigrant students somehow provides them specific authority to terminate

13

Plaintiffs' status. The Court finds the argument wholly unpersuasive and Defendants' reliance on § 1372 for this proposition misplaced. As the Supreme Court has long held, "[i]t is an old and familiar rule that, where there is, in the same statute, a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment. This rule applies wherever an act contains general provisions and also special ones upon a subject, which, standing alone, the general provisions would include." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 646 (2012) (quoting *United States v. Chase*, 135 U.S. 255, 260 (1890)). *See also McKenna v. Dillon Transp., LLC*, 97 F.4th 471, 476 (6th Cir. 2024) (citing *RadLAX* for the proposition that "[t]his general-specific canon applies to statutes with conflicting provisions and statutes with 'a specific provision that is swallowed by [a] general one'").

Several other district courts have similarly resoundingly rejected the government's reliance on § 1372 as a source of authority to terminate a student's record. *See Liu v. Noem*, No. 25-CV-133-SE, 2025 WL 1233892, at *10 (D.N.H. Apr. 29, 2025) ("[The defendants] offered no argument connecting the authority to collect information to the decision to terminate Liu's status."); *Student Doe #2 v. Kristi Noem*, No. 2:25-CV-00680-DGE, 2025 WL 1208273, at *8 (W.D. Wash. Apr. 25, 2025) ("[Section 1372] confers authority to create the SEVIS system but says nothing about termination of a student's record in the system."); *Arizona Student Doe #1 v. Trump*, No. CV-25-00174-TUC-JGZ, 2025 WL 1192826, at *6 (D. Ariz. Apr. 24, 2025) ("[W]hile ICE claims the inherent authority under 8 U.S.C. § 1372 'to terminate SEVIS records, as needed, to carry out the purposes of the program,' there does not appear to be any externally imposed limiting principle to this authority."); *Doe v. Noem*, No. 2:25-CV-00633-DGE, 2025 WL 1141279,

14

at *6 (W.D. Wash. Apr. 17, 2025) ("8 CFR § 214.1(d) speaks specifically to when a SEVIS record may be terminated, 8 U.S.C. § 1372 does not.").

Defendants do not supply any other new argument related to Plaintiffs' likelihood of success on the merits of Plaintiffs' APA claim, and the Court discerns no basis for a different conclusion. Hence, this first factor continues to tip in Plaintiffs' favor.[4]

2. <u>Irreparable Injury Without an Injunction</u>

Turning next to the second factor, the Sixth Circuit reiterated last month that "'irreparable' means 'not fully compensable by monetary damages.'" *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, No. 24-3211, ___F.4th ___, 2025 WL 1099086, at *12 (6th Cir. Apr. 14, 2025). This Court previously determined that Plaintiffs' loss of timely academic progress, whether such progress is accomplished in preparing a dissertation or gaining practical work experience, and their uncertain legal status, constitute irreparable harms that are not compensable by money damages (4/23/25 Op. & Order, ECF No. 19 at PageID.566).

Defendants argue that Plaintiffs' request for a preliminary injunction is now moot because Defendants restored the SEVIS records, and, according to Defendants, "those records will remain in an active status following the expiration of the TRO" and "for the foreseeable future" (Defs. Resp., ECF No. 26 at PageID.622, 628). Defendants opine that "Plaintiffs' claims that their SEVIS records may be altered at some time in the future for other reasons, is pure speculation" (*id.* at PageID.628). Defendants also argue that the likelihood of arrest or detention is likewise relieved due to the restoration of Plaintiffs' SEVIS records (*id.* at PageID.629). Defendants reiterated these

---

[4] Because Plaintiffs have demonstrated a sufficient likelihood of success on the merits of their APA claim, this Court, like another district court in a similar posture, will not yet reach the merits of Plaintiffs' due process claim. *See Liu v. Noem*, No. 25-CV-133-SE, 2025 WL 1233892, at *10, n.7 (D.N.H. Apr. 29, 2025) (deciding the merits of the students-plaintiffs' APA claim, only, supported issuance of a preliminary injunction).

15

same points on the record on May 6, 2025 and further emphasized that while the new ICE policy permits termination of a student's SEVIS record when the Department of State revokes the student's visa, such termination is "not mandatory."

Plaintiffs argue that their request for a preliminary injunction is *not* moot because "there is a reasonable expectation that the wrongful actions will recur and interim relief for the terminations has not completely and irrevocably eradicated the harm of the Defendant's unlawful acts" (ECF No. 37 at PageID.673). Plaintiffs opine that Defendants' actions after this Court issued the TRO on April 22, 2025 underscore the need for a preliminary injunction to maintain the status quo (*id.*).

In the Sixth Circuit, "'[t]he test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties.'" *Coal. for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 458 (6th Cir. 2004) (citation omitted). "[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* Voluntary cessation of alleged illegal conduct will only moot a case "where there is 'no reasonable expectation that the alleged violation will recur,' and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019) (quoting *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979)).

According to the Supreme Court, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). The Sixth Circuit has likewise in-

structed that courts should take into account "the totality of the circumstances surrounding the voluntary cessation, including the manner in which the cessation was executed." *Speech First*, 939 F.3d at 767–68.

The "burden in showing mootness is lower when it is the government that has voluntarily ceased its conduct," and "'cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties' and that '[the government's] self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine.'" *Id.* at 767 (citation omitted). When regulatory changes are implemented with "legislative-like procedures" or "formal processes," the government "need not do much more than simply represent that it would not return to the challenged policies." *Id.* In contrast, when a change is "ad hoc, discretionary, and easily reversible" or requires little in the way of formal process, "significantly more than the bare solicitude itself is necessary to show that the voluntary cessation moots the claim." *Id.*

For example, in *Speech First*, the University of Michigan was sued by a student organization challenging the University's policy prohibiting harassment and bullying as overbroad and vague. 939 F.3d at 761–62. After the plaintiff-organization filed its complaint, the University removed the challenged definitions of bullying and harassment from its policy but continued to argue in court that those definitions did not violate the First Amendment. *Id.* at 769–70. The Sixth Circuit determined that the change was not legislative, and the Sixth Circuit considered the timing of the University's change of policy "suspect" and the University's continued defense of its policy in court as indicative that the University was likely to continue in the challenged conduct. *Id.* The Sixth Circuit concluded that the district court had erred in determining that the claims challenging

17

the policy were moot and remanded the case back to the district court to consider the merits of the issue. *Id.* at 761.

The Sixth Circuit reached a different conclusion in *Davis v. Colerain Township*, 51 F.4th 164 (6th Cir. 2022). In *Davis*, the plaintiff brought a 42 U.S.C. § 1983 action against Colerain Township, alleging that its policy of precluding "disrespectful" remarks at board meetings violated the First Amendment. *Id.* at 168. After the lawsuit was filed, Colerain Township voluntarily changed the policy. *Id.* at 175. When considering whether the voluntary cessation rendered the litigation moot, the Sixth Circuit noted that just before the change in policy, legal counsel had informed Colerain Township about a recent Sixth Circuit decision holding that another town's restrictions on "abusive" or "antagonistic" statements at board meetings violated the First Amendment. *Id.* The Sixth Circuit concluded that Colerain Township had changed its policy in light of an external factor—recent and controlling Sixth Circuit precedent—rather than with the intent to moot and thereby thwart the plaintiff's lawsuit. *Id. See also Doe*, 78 F.4th at 947 (also finding that an external factor in the form of new binding precedent from the Sixth Circuit precipitated the change in the University's policy under examination).

Here, Defendants terminated Plaintiffs' SEVIS records where apparently no qualifying reason existed, then restored Plaintiffs' records on SEVIS in response to this Court's Order, and have since broadcasted a message to employees permitting the termination of records in the future if "evidence of a failure to comply with the terms of nonimmigrant status exists." The changes wrought by Defendants appear to squarely fall within the category of "compliance" that is ad hoc, discretionary, and/or easily reversible. Given the totality of the circumstances in the existing record, the Court concludes that Defendants have not borne their burden of demonstrating that the challenged conduct could not reasonably be expected to recur. Conversely, Plaintiffs have borne

their burden of persuading the Court that they cannot be assured, for the foreseeable future, that they will not suffer irreparable injury absent a preliminary injunction.

3.     Balancing of Equities & Public Interest

Last, the Court finds that granting the requested interim relief will not cause Defendants substantial harm and that the public interest will be served.  The parties did not supply the Court any new authority on these final factors, and the Court continues to adhere to the proposition that public interest militates in favor of the government adhering to regulations and preventing constitutional violations.

In sum, the Court determines that the balance of factors weighs in favor of granting preliminary injunctive relief pending the adjudication of the merits of Plaintiffs' claims.  Such relief "simply preserves the status quo" that has been in place for the several years that Plaintiffs have been in the United States as legal nonimmigrant students and employees.  *See Towerco*, 110 F.4th at 879–80.

### C. Security

Federal Rule of Civil Procedure 65(d) states that "no restraining order of preliminary injunction shall issue except upon the giving of security by the applicant ...."  FED. R. CIV. P. 65(d).  "While ... the language of Rule 65(d) appears to be mandatory, and many circuits have so interpreted it, the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security."  *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978); *Urbain v. Knapp Bos. Mfg. Co.*, 217 F.2d 810, 815-16 (6th Cir. 1954)).  In their written submissions to this Court, Defendants did not identify any purpose that requiring a security would serve.  The Court therefore continues to waive the security requirement of Rule 65(d).

19

## III.  CONCLUSION

Accordingly, for the reasons stated on the record on May 6, 2025 and herein,

**IT IS HEREBY ORDERED**, in the Court's discretion, that Plaintiffs' request for a Preliminary Injunction (ECF No. 5) is GRANTED.  A Preliminary Injunction consistent with this Opinion and Order will separately issue.

**IT IS FURTHER ORDERED** that Plaintiffs' Second Motion for an Order to Show Cause (ECF No. 28, as corrected by ECF No. 31) is DENIED.

**IT IS FURTHER ORDERED**, consistent with the Court's direction on the record on May 6, 2025, that Defendants shall file, <u>not later than May 13, 2025</u>, a Notice that

(1) confirms that each of the thirty-one Plaintiffs in this case has a notation on their SEVIS record indicating that the particular record has been restored retroactively to the original date of the termination; and

(2) addresses whether SEVP can copy the notation to a field that is visible to Plaintiffs' respective DSOs.

Dated:  May 7, 2025                                     /s/ Jane M. Beckering
                                                        JANE M. BECKERING
                                                        United States District Judge