UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MADAN B K, et al.,

Plaintiffs,

v.

KRISTI NOEM, et al.,

Defendants.

__________________________________/

Case No. 1:25-cv-419

HON. JANE M. BECKERING

**OPINION AND ORDER**

Plaintiffs are international students or recent graduates who, like many others across the nation in early 2025, abruptly received notice from their educational institutions that the government records used to document their legal nonimmigrant status in the United States had been terminated by the Department of Homeland Security (DHS). Plaintiffs brought suit against Kristi Noem, then in her official capacity as DHS Secretary; Todd Lyons, then in his official capacity as Acting ICE Director; and Robert Lynch, in his official capacity as Field Office Director of Detroit–ICE (ECF No. 1).[1] This Court issued temporary and preliminary injunctive relief to Plaintiffs, and Defendants filed an appeal to the Court of Appeals for the Sixth Circuit. This case was stayed until Defendants voluntarily dismissed the appeal. Now pending before the Court are the parties' cross-motions for summary judgment (ECF Nos. 73 & 79). For the following reasons, the Court grants in part and denies in part Defendants' motion (ECF No. 73) and denies Plaintiffs' motion (ECF No. 79).

[1] The parties have not submitted any filing to prompt amendment of the caption in this case. *See generally* FED. R. CIV. PRO. 25(d) (Substitution of Parties).

# I. BACKGROUND

## A. Legal Context

As indicated more fully in this Court's prior Opinions and Orders (ECF No. 19 at PageID.553–555; ECF No. 44 at PageID.873–877), the following terms are important to understanding the legal context of this case.

***F-1 & M-1 Visas.*** Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(15)(F)(i) and (M)(i), a noncitizen can enroll in a government-approved academic institution as an F-1 nonimmigrant student or in a vocational or other recognized nonacademic institution as an M-1 nonimmigrant student. *See* 8 C.F.R. § 214.1(a)(2) (delineating classification designations, including "F-1" and "M-1"). The United States Department of State is the entity charged with issuing F-1 and M-1 nonimmigrant visas to admitted international students. To gain entry into the United States, an F-1 student must have a visa, a valid passport, and "a Form I-20 ... issued in the student's name by a school certified by [SEVP] for attendance by F-1 foreign students[.]" 8 C.F.R. § 214.1(a)(3)(*i*) (Requirements for Admission) (visa and valid passport); *id.* § 214.2(f)(1)(*i*)(A) (Special Requirements) (Certificate of Eligibility for Nonimmigrant (F-1) Student Status (or "Form I-20")). A visa, while a critical document, does not govern how long a student may stay in the United States.

***F-1 & M-1 Status.*** Once students enter the United States, they are issued I-94 Arrival/Departure Records that reflects their F-1 student or M-1 vocational *status*. They are permitted to remain in the United States for their particular duration of status ("D/S").

For F-1 students, "duration of status" is defined, in general, as "the time during which an F-1 student is pursuing a full course of study at an educational institution certified … for attendance by foreign students, or engaging in authorized practical training following completion of

studies[.]" 8 C.F.R. § 214.2(f)(5)(*i*). F-1 students are also entitled to participate in two types of post-completion practical training programs: Curricular Practical Training ("CPT") and Optional Practical Training ("OPT"). *See id.* § 214.2(f)(10)(*i*) & (*ii*). Students may also qualify for a "24-month extension of post-completion OPT for a science, technology, engineering, or mathematics (STEM) degree." *Id.* § 214.2(f)(10)(*ii*)(C). In this regard, "duration of status" is defined as "the period beginning on the date that the student's application for OPT was properly filed and pending approval, including the authorized period of post-completion OPT, and ending 60 days after the OPT employment authorization expires." *Id.* § 214.2(f)(10)(D).

A student in M-1 nonimmigrant status is admitted for a "fixed time period," which is defined as "the period necessary to complete the course of study indicated [], plus practical training following completion of the course of study, plus an additional 30 days to depart the United States, but not to exceed a total period of one year." *Id.* § 214.2(m)(5).

***SEVP & SEVIS.*** The United States Immigration and Customs Enforcement ("ICE"), a subagency of DHS, is responsible for the Student and Exchange Visitor Program ("SEVP"), which keeps records on F-1 and M-1 students. *See generally* 8 U.S.C. § 1372 (requiring the creation of a program to "collect … information"). SEVP manages the Student and Exchange Visitor Information System (SEVIS) system, an internet-based database used to track and document the continuing status of noncitizen students who are authorized to be in the United States to study pursuant to F-1 and M-1 student visas or other study-related visas. Institutions that obtain formal approval from DHS to sponsor F-1 and M-1 students must keep records containing certain information and documents relating to each student. *See generally* 8 C.F.R. § 214.3 (Certification and recertification of schools for enrollment of F and M nonimmigrants), and, more specifically,

*id.* § 214.3(g)(1) (Recordkeeping and reporting requirements). A Designated School Official ("DSO") monitors, advises, and oversees the students attending that institution.

***Termination of Status***. F-1 and M-1 students fail to maintain their particular status when they do not comply with the requirements set forth in the Code of Federal Regulations in 8 C.F.R. § 214.2(f) or § 214.2(m) that govern their respective visa classification. For example, F-1 and M-1 students must maintain a full course of study. *See id.* §§ 214.2(f)(6), (m)(9). DSOs must report to SEVP, via SEVIS, when a student fails to maintain status. *Id.* § 214.3(g)(2) (Reporting changes in student and school information).

Additionally, students are subject to the general requirements for "maintenance of status" set forth in 8 C.F.R. § 214.1 that apply to several nonimmigrant classes, including F-1 and M-1 students. Pertinent to the case at bar is subsection (g), which instructs that a nonimmigrant's admission and continued stay in the United States is conditioned on "obedience to all laws of United States jurisdictions which prohibit the commission of crimes of violence and for which a sentence of more than one year imprisonment may be imposed." *Id.* § 214.1(g). "A nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status[.]" *Id.*

Last, a student's F-1 or M-1 status can also be terminated due to an agency termination of status. In this regard, subsection (d) provides that "[w]ithin the period of initial admission or extension of stay, the nonimmigrant status of an alien shall be terminated [1] by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; [2] by the introduction of a private bill to confer permanent resident status on such alien; or, [3] pursuant to

notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." *Id.* § 214.1(d).

The termination of a student's status can have a cascading effect. For example, a student's off-campus employment authorization is "automatically terminated whenever the student fails to maintain status." *Id.* § 214.2(f)(9)(2). Additionally, during post-completion OPT, F-1 status is dependent upon employment. In general, OPT students "may not accrue an aggregate of more than 90 days of unemployment during any post-completion OPT period." *Id.* § 214.2(f)(10)(ii)(E). Students in STEM-OPT "may not accrue an aggregate of more than 150 days of unemployment during a total OPT period." *Id.* Last, per current DHS guidance, a student with a terminated SEVIS record "cannot re-enter the United States," and ICE may "investigate to confirm the departure of the student." https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student [https://perma.cc/5C5F-K7HN].

While a student *may* seek reinstatement of her status in SEVIS, a student is not required to do so. More important, there are no grace periods for F-1 and M-1 students who fail to maintain status to prepare for departure. *See* 8 C.F.R. § 214.2(f)(5)(iv) ("An F-1 student who has completed a course of study and any authorized practical training following completion of studies will be allowed an additional 60-day period to prepare for departure from the United States or to transfer in accordance with paragraph (f)(8) of this section.… However, an F-1 student who fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status is not eligible for an additional period for departure."). Likewise, "[a]n M-1 student who fails to maintain a full course of study or otherwise fails to maintain status is not eligible for the additional 30-day period of stay." *Id.* § 214.2(m)(5).

### B. Factual Background & Procedural Posture

Plaintiffs are F-1 and M-1 nonimmigrant students either attending or recently graduated from universities or vocational programs in Michigan, Illinois, Iowa, Missouri, New Hampshire, Pennsylvania, Texas, Utah, and Wisconsin (Jt. Statement of Material Facts [JSMF, ECF No. 76] ¶¶ 8–9). In March and April 2025, ICE engaged in what it called the Student Criminal Alien Initiative (SCAI) (*id.* ¶ 1). ICE's review led it to compile a list of approximately 6,400 students with National Criminal Information Center (NCIC) "hits" (*id.* ¶ 2). ICE sent its list to the State Department for further review and potential action (*id.*). The State Department, in turn, revoked over 3,200 visas and made recommendations to terminate some SEVIS records (*id.* ¶ 3).

On or about March 28, 2025, SEVP began to amend the SEVIS records of numerous F-1 and M-1 students, including Plaintiffs, to set their record designations as "terminated" (4/18/2025 Andre Watson Decl. [ECF No. 10] ¶¶ 8, 10, 13, 17, 19, 22, 25, 28, 31, & 34; Brian Childs, Ed.D. Updated Decl. [ECF No. 39] ¶ 17). Defendants assert that they "did not delete Plaintiffs from the SEVIS database or terminate their F-1 student status" (Defs. Resp., ECF No. 8 at PageID.184), an assertion that Plaintiffs characterize as "artful paltering" (Pls. Reply, ECF No. 12 at PageID.211). Ultimately, ICE terminated about 5,000 SEVIS records (JSMF ¶ 4).

Most Plaintiffs were not notified by DHS or another government agency of the actions taken; rather, most Plaintiffs received an email from their schools informing them that their respective school learned during a periodic check of SEVIS records that the respective Plaintiff's student status had been terminated (Am. Compl.[2] ¶¶ 8–9). The reason for termination, as recorded in SEVIS, was largely the same for each Plaintiff, to wit:

[2] Plaintiffs refer to their Amended Complaint as a "Verified" amended complaint and promised therein the filing of supporting declarations, *see* ECF No. 22 at PageID.579 n.7; however, no declarations have been filed to date.

> OTHERWISE FAILING TO MAINTAIN STATUS: Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.

(Emails, Pls. Exs. B–J & O [ECF No. 1-1 at PageID.48–68, & 81]). The schools advised Plaintiffs to "stop working immediately" and/or consult with an attorney and/or make arrangements to "immediately" leave the country (*id.*).

Plaintiffs concede that they have each had contact with the criminal justice system (e.g., speeding tickets and dismissed charges); however, Plaintiffs allege that no Plaintiff has been convicted of a crime of violence for which a sentence of more than one year of imprisonment may be imposed (Am. Compl. ¶¶ 21–50; Joinder ¶ 3). Plaintiffs further allege that they have not violated any immigration laws (Am. Compl. ¶¶ 6, 21–50; Joinder ¶ 3).

Plaintiffs initiated this case on April 14, 2025 with the filing of a Complaint (ECF No. 1), which they subsequently amended to add more students (ECF No. 22).[3] Plaintiffs allege four claims. In Counts 1 and 4, Plaintiffs allege that Defendants violated the Due Process Clause of the United States Constitution. In Counts 2 and 3, Plaintiffs allege that Defendants violated the Administrative Procedures Act (APA). Plaintiffs seek only declaratory and injunctive relief.

On April 15, 2025, Plaintiffs filed an Emergency Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 5). This Court noticed oral argument on the request for a temporary restraining order (TRO) and required a response from Defendants (Order, ECF No. 6). On April 18, 2025, Defendants filed a response to Plaintiffs' request for a temporary restraining order (ECF No. 8), with a supporting declaration from Andre Watson, the

---

[3] The original Complaint was filed by ten Plaintiffs (ECF No. 1). Twenty more Plaintiffs were added via a First Amended Complaint (ECF No. 22), and one more Plaintiff was added via Joinder (Order, ECF No. 33). Two Plaintiffs were voluntarily dismissed and terminated as parties in July 2025 (ECF Nos. 53 & 54).

"Senior Official within the National Security Division (NSD) for Homeland Security Investigations (HSI)" (ECF No. 10). On April 21, 2025, Plaintiffs filed a reply to Defendants' response (ECF No. 12), attaching a supporting declaration from Brian Childs, Ed.D., the Senior Director of the International Student & Scholar Services Office of Western Michigan University (WMU) (ECF No. 12-1). On April 22, 2025, this Court heard oral argument on the request for a temporary restraining order.

On April 23, 2025, this Court issued a Temporary Restraining Order (ECF No. 20), for the reasons set forth in the accompanying Opinion and Order (ECF No. 19). In pertinent part, this Court required the student record termination decisions to be set aside and the records to be restored, retroactive to the date of termination (ECF No. 20). This Court further required that the student records not be terminated absent a valid ground for termination and prohibited Defendants from revoking Plaintiffs' OPT employment authorizations (*id.*). Last, this Court prohibited Defendants from arresting, detaining, or transferring Plaintiffs or initiating removal proceedings against or deporting any Plaintiff based on the termination of a student record in SEVIS (*id.*). This Court's Order required further briefing on the matter of a preliminary injunction and noticed an evidentiary hearing for May 6, 2025 (*id.*).

On April 26, 2025, ICE issued a "Broadcast Message" to "[a]ll SEVP Personnel" relevant to SEVIS records. The new policy delineates a non-exhaustive list of ten reasons that SEVP can use to terminate SEVIS records, including, in pertinent part: "Evidence of a Failure to Comply with the Terms of Nonimmigrant Status Exists" and "U.S. Department of State Visa Revocation (Effective Immediately)" (ICE Policy, ECF No. 25-1 at PageID.619–620).

On April 29, 2025, Defendants filed their response to Plaintiffs' request for a preliminary injunction (ECF No. 26). On May 2, 2025, Plaintiffs filed a reply to the response (ECF No. 37).

In an Updated Declaration from Dr. Childs filed on May 5, 2025 (ECF No. 39), Dr. Childs declared that the records of the affected WMU students continue to indicate an accumulation of out-of-status dates (*id.* ¶ 14 [B K–21 days], ¶ 15 [Gao–15 days], ¶ 16 [Tay–16 days], ¶ 17 [Sabir–27 days], ¶ 18 [Shetty–18 days], ¶ 19 [Eshika Singh–16 days], ¶ 20 [Mannraj Singh–16 days], and ¶ 21 [Titare–21 days]).

Also on May 5, 2025, Defendants, in turn, provided a Declaration from James Hicks, the SEVP Division Chief of External Operations (Hicks Decl. [ECF No. 41-1]). Hicks attests that "for each plaintiff(s) in this case, SEVP has set their SEVIS record back to 'active'" (*id.* ¶ 3). Hicks explained that, due to the technical limitations of the SEVIS system, the "event history for a given record cannot be deleted from the system" (*id.*). According to Hicks, SEVP added a notation to each record indicating that the student's record had been restored retroactively to the original date of the termination, as ordered by this Court, although he conceded that the notations are not viewable to end-users outside of SEVP, such as DSOs (*id.* ¶ 4).

The parties agree that by May 6, 2025, ICE had reactivated Plaintiffs' SEVIS records (JSMF ¶ 6). Additionally, ICE sent personalized letters to the F-1 students associated with the previously terminated SEVIS records stating that the return of the SEVIS record to active was retroactive to the date of the termination such that there is no lapse in the record (*id.* ¶ 7).

At this Court's May 6, 2025 hearing on Plaintiffs' outstanding request for a preliminary injunction, Plaintiffs relied on Dr. Child's Updated Declaration. The government did not present any evidence. This Court issued a Preliminary Injunction the following day (ECF No. 45) for the reasons set forth in the accompanying Opinion and Order (ECF No. 44). After the hearing, and at the Court's request, Defendants filed a Notice and Status Update (ECF No. 46), confirming that Plaintiffs' SEVIS records were restored and that each Plaintiff's SEVIS record contained a

notation that the restoration was retroactive to the date of termination (*id.* at PageID.894–896). In his May 6, 2025 Declaration, Watson represented that "ICE has no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS records based solely on the NCIC record that led to its initial termination" (5/6/2025 Watson Decl. [ECF No. 46-1] ¶ 6).

On July 7, 2025, Defendants filed an appeal to the Sixth Circuit (ECF No. 53), and this Court stayed and administratively closed this case pending resolution of their appeal (Order, ECF No. 67). However, Defendants subsequently moved to voluntarily dismiss their appeal, and the Sixth Circuit granted their motion on February 23, 2026 (ECF No. 68).

On February 27, 2026, this Court ordered Defendants to respond to Plaintiffs' First Amended Complaint (Order, ECF No. 70), and Defendants filed the pending Motion for Summary Judgment on March 20, 2026 (ECF No. 73). On May 12, 2026, no response from Plaintiffs having been filed to Defendants' motion, this Court issued an Order requiring a response not later than May 26, 2026 (ECF No. 77). On May 26, 2026, Plaintiffs filed a combined response and cross-motion for summary judgment (ECF No. 79). On June 3, 2026, Defendants filed a combined reply in support of their motion and response to Plaintiffs' cross-motion (ECF No. 81). Plaintiffs did not file any reply to Defendants' response. Having considered the parties' submissions, the Court concludes that oral argument is unnecessary to resolve the issues presented. *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

### A. Motion Standard

The parties' pending motions are filed pursuant to Federal Rule of Civil Procedure 56. A party may move for summary judgment "at any time until 30 days after the close of all discovery." FED. R. CIV. P. 56(b). And the Sixth Circuit has held that "no answer need be filed before a

defendant may move for summary judgment." *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 404 (6th Cir. 1987). The movant must identify each claim on which summary judgment is sought. FED. R. CIV. P. 56(a). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

In resolving a motion for summary judgment, a court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citation omitted). The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"A dispute is genuine only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) (citation omitted). "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess*, 735 F.3d at 471 (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

When evaluating cross-motions for summary judgment, the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506–07 (6th Cir. 2003); *see also Harris v. City of Saginaw*, 62 F.4th 1028, 1032–33 (6th Cir. 2023) (describing the "hat switch courts perform when evaluating cross-motions for summary judgment"). "The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment

for one side or the other is necessarily appropriate." *Parks v. LaFace Records,* 329 F.3d 437, 444 (6th Cir. 2003).

**B. Discussion**

Defendants argue that they are entitled to summary judgment because Plaintiffs' claims lack justiciability, Plaintiffs' due process claims lack merit, and relief under the APA is precluded. For the following reasons, the Court agrees that Plaintiffs' due process claims are properly dismissed and determines that neither Defendants nor Plaintiffs are entitled to judgment as a matter of law on Plaintiffs' remaining APA claims.

**1. <u>Defendants' Justiciability Arguments Lack Merit</u>**

As a threshold matter, Defendants argue that summary judgment in their favor is proper because Plaintiffs' claims in Counts 1 through 4 are not justiciable where the claims are moot, not ripe, and/or seek relief beyond this Court's jurisdiction (ECF No. 74 at PageID.1440–1455). Defendants emphasize that "Plaintiffs already obtained the precise relief they demanded: their SEVIS records have been retroactively reactivated with no gaps, no adverse consequences, and a form assurance from U.S. Immigration and Customs Enforcement (ICE) that the records will not be re-terminated on the same basis" (*id.* at PageID.1427). Conversely, Defendants argue that Plaintiffs' theory that they may be unlawfully detained in the future is speculative and unripe and would require this Court to improperly impose "pre-enforcement supervisory conditions on future arrest authority" (*id.* at PageID.1453–1455).

In response, Plaintiffs emphasize that Defendants "admitted no fault in their actions" and only "voluntarily" restored Plaintiffs' SEVIS records after this Court ordered their SEVIS status restored (ECF No. 80 at PageID.1478). Plaintiffs argue that rather than codifying that their conduct was wrongful and should not be repeated, Defendants instead issued a new policy authorizing

themselves to repeat the challenged conduct (*id.*). Plaintiffs assert that Defendants' new policy falls far short of the standard for mootness (*id.*). Plaintiffs point out that Defendants continue to threaten some Plaintiffs' valid nonimmigrant status in subsequent adjudications of applications for STEM OPT extensions (*id.*, referencing 1/28/2026 Notice of Intent to Deny, Pl. Supp. Ex. 1, ECF No. 78-1; and 9/29/2025 Request for Evidence, Pl. Supp. Ex. 2, ECF No. 78-2).

Defendants' argument does not entitle them to summary judgment.

"A core tenet of Article III is that 'federal courts may adjudicate only actual, ongoing cases or controversies.'" *Patton v. Fitzhugh*, 131 F.4th 383, 392 (6th Cir. 2025) (citation omitted). The mootness doctrine "requires that there be a live case or controversy at the time that a federal court decides the case." *Burke v. Barnes*, 479 U.S. 361, 363 (1987). "Thus, when a case at first presents a question concretely affecting the rights of the parties, but—as a result of events during the pendency of the litigation—the court's decision would lack any practical effect, the case is moot." *Ohio v. US EPA*, 969 F.3d 306, 308 (6th Cir. 2020). "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Patton*, 131 F.4th at 392–93 (citation omitted). The ripeness doctrine similarly precludes courts from "entangling themselves in abstract disagreements.'" *Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 263 (6th Cir. 2009) (citations omitted). "Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *Id.*

Here, Defendants contend that Plaintiffs have obtained the relief they demanded and that Plaintiffs' need for any future relief is not ripe for adjudication. Importantly, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle

until he achieves all his unlawful ends." *Id.* Voluntary cessation of alleged illegal conduct will only moot a case "where there is 'no reasonable expectation that the alleged violation will recur,' and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019) (quoting *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979)).

According to the Supreme Court, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). The Sixth Circuit has likewise instructed that courts take into account "the totality of the circumstances surrounding the voluntary cessation, including the manner in which the cessation was executed." *Speech First*, 939 F.3d at 767–68. The bar is high for when voluntary cessation by a private party will moot a claim, but the "burden in showing mootness is lower when it is the government that has voluntarily ceased its conduct[.]" *Id.* at 767. That said, "self-correction" by the government will provide a secure foundation for a dismissal based on mootness only when "'it appears genuine.'" *Id.* (cleaned up and citation omitted). Specifically, when regulatory changes are implemented with "legislative-like procedures" or "formal processes," the government "need not do much more than simply represent that it would not return to the challenged policies." *Id.* In contrast, when a change is "ad hoc, discretionary, and easily reversible" or requires little in the way of formal process, "significantly more than the bare solicitude itself is necessary to show that the voluntary cessation moots the claim." *Id.*

For example, in *Speech First*, the University of Michigan was sued by a student organization challenging the University's policy prohibiting harassment and bullying as overbroad

and vague. 939 F.3d at 761–62. After the plaintiff-organization filed its complaint, the University removed the challenged definitions of bullying and harassment from its policy but continued to argue in court that those definitions did not violate the First Amendment. *Id.* at 769–70. The Sixth Circuit determined that the change was not legislative, and the Sixth Circuit considered the timing of the University's change of policy "suspect" and the University's continued defense of its policy in court as indicative that the University was likely to continue in the challenged conduct. *Id.* The Sixth Circuit concluded that the district court had erred in determining that the claims challenging the policy were moot and remanded the case back to the district court to consider the merits of the issue. *Id.* at 761.

The Sixth Circuit reached a different conclusion in *Davis v. Colerain Township*, 51 F.4th 164 (6th Cir. 2022). In *Davis*, the plaintiff brought a 42 U.S.C. § 1983 action against Colerain Township, alleging that its policy of precluding "disrespectful" remarks at board meetings violated the First Amendment. *Id.* at 168. After the lawsuit was filed, Colerain Township voluntarily changed the policy. *Id.* at 175. When considering whether the voluntary cessation rendered the litigation moot, the Sixth Circuit noted that just before the change in policy, legal counsel had informed Colerain Township about a recent Sixth Circuit decision holding that another town's restrictions on "abusive" or "antagonistic" statements at board meetings violated the First Amendment. *Id.* The Sixth Circuit concluded that Colerain Township had changed its policy in light of an external factor—recent and controlling Sixth Circuit precedent—rather than with the intent to moot and thereby thwart the plaintiff's lawsuit. *Id. see also Doe*, 78 F.4th at 947 (finding that an external factor in the form of new binding precedent from the Sixth Circuit precipitated the change in the University's policy under examination).

Here, Defendants terminated Plaintiffs' SEVIS records where no apparently qualifying reason existed, restored Plaintiffs' records on SEVIS in response to this Court's Order, and subsequently broadcast a message to employees permitting the termination of records in the future if "evidence of a failure to comply with the terms of nonimmigrant status exists." The changes wrought by Defendants appear to squarely fall within the category of "compliance" that is ad hoc, discretionary, and/or easily reversible. As other district courts have observed, the reactivation of the terminated SEVIS records and abrupt policy change in April 2025 appear to have been motivated not by a "genuine" "self-correction" but by the filing of a "torrent of lawsuits about the SEVIS terminations during the SCAI ... and numerous adverse judicial rulings." *Raj v. U.S. Dep't of Homeland Sec.*, No. 1:25-CV-10911-IT, 2026 WL 2023191, at *5 (D. Mass. July 13, 2026) (quoting *Presidents' All. on Higher Educ. & Immigr. v. Noem*, 824 F. Supp. 3d 168, 191 (D. Mass. 2026) (collecting cases)).

Indeed, as another court has observed, the wording itself of the mid-litigation declaration—indicating that ICE has "no plans" to re-terminate Plaintiffs—is not a secure foundation for dismissal. *See*, *e.g*., *Mashatti v. Lyons*, No. CV 25-1100 (RJL), 2026 WL 1983715, at *3 (D.D.C. July 9, 2026) (observing that "this declaration speaks only to the Government's present 'plans'"). Similarly, the new policy affirms that SEVP can terminate SEVIS records when there is "evidence" that an individual has failed to maintain status but sets no guardrails for how the agency makes that determination. *Bushireddy v. Lyons*, No. 25-1102 (SLS), 2026 WL 759480, at *6 (D.D.C. Mar. 18, 2026); *see also Shaik v. Mullin*, No. CV 25-1584 (JRT/DJF), 2026 WL 2410425, at *1 (D. Minn. Aug. 18, 2026) (opining that "ICE chose its words very carefully" and left an "obvious" "gaping hole"); *Mashatti*, 2026 WL 1983715, at *4 (pointing out that the policy is "entirely silent on whether a criminal arrest and prosecution may lead to SEVIS termination"); *Doe v. Noem*, No.

2:25-633, 2025 WL 1397007, at *5 (W.D. Wash. May 14, 2025) (characterizing the wording of ICE's promise as "hardly ironclad"). Given the totality of the circumstances in the existing record, the Court concludes, like these district courts, that Defendants have not borne their burden of demonstrating that their voluntary cessation is sufficient to render this case moot. *See also Shaik*, 2026 WL 2410425, at *3 ("[T]he Court is not aware of any other federal court which has dismissed a case on mootness grounds where the plaintiffs have not stipulated to such dismissal."). Plaintiffs' claims likewise do not require this Court to entangle itself in abstract disagreement such that dismissal based on unripeness would be warranted.

In short, Plaintiffs retain legally cognizable interests in the outcome of this litigation. There remains effective relief that the Court can provide Plaintiffs, i.e., injunctive and declaratory relief permanently preventing ICE from terminating their SEVIS records for unlawful and extra-regulatory reasons.[4] Because intervening events have not "secure[d] outside of litigation all the relief" that Plaintiffs can obtain and Plaintiffs' claims are not anchored in future events that may not occur as anticipated, their claims are neither moot nor unripe. The Court therefore turns to Defendants' arguments about the merits of Plaintiffs' claims.

**2. <u>Plaintiffs' Due Process Claims (Counts 1 & 4) Are Properly Dismissed</u>**

In Count 1, Plaintiffs allege a "Violation of Fifth Amendment–Procedural Due Process" based on their F-1 student SEVIS record terminations without notice or a meaningful opportunity to be heard (Am. Compl. ¶¶ 75–79). In Count 4, Plaintiffs allege a "Violation of Fifth Amendment–Procedural Due Process" based on their "imminent risk of abrupt arrest" and "unlawful detention" without "fair, pre-deprivation process" (Am. Compl. ¶¶ 92–95).

[4] As indicated, *infra*, however, Plaintiffs' paltry submission does not provide the Court with developed argument about the merits of their claims or the propriety—let alone parameters—of permanent injunctive relief.

Defendants argue that they are entitled to summary judgment on Plaintiffs' due process claims because the actions alleged in the Amended Complaint do not violate due process where Plaintiffs do not have a constitutionally protected liberty or property interest in the maintenance of a SEVIS record and no liberty or property interest in obtaining discretionary relief in immigration proceedings (ECF No. 74 at PageID.1440).

Plaintiffs' brief eight-page supporting memorandum (ECF No. 80) does not address Defendants' argument related to their due process claims in Counts 1 and 4; rather, Plaintiffs indicate only that they should prevail on their APA claims in Counts 2 and 3 (*id.* at PageID.1479).

Defendants are entitled to summary judgment in their favor on Counts 1 and 4.

The Sixth Circuit has stated that its "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases therein); *see also Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 324 (6th Cir. 2023) ("When a litigant fails to address a claim in response to a motion for summary judgment, that claim is deemed abandoned or forfeited."). The Court determines that Plaintiffs have therefore abandoned their due process claims in Counts 1 and 4.

Moreover, such due process claims have not been upheld. Other district courts have reasonably concluded that students pursuing similar claims do not have a constitutionally protected property interest in either their SEVIS records or their visa status. *See*, *e.g.*, *Chatwani v. Noem*, No. 25-cv-04024, 2026 WL 458418, at *4 (N.D. Ill. Feb. 18, 2026) ("Even accepting [the student's] assertion that the property interest at issue is his lawful visa status, a petitioner has no liberty or property interest in obtaining purely discretionary relief in immigration proceedings."); *Saxena v. Noem*, No. 5:25-cv-05035-KES, 2026 WL 84248, at *8 (D.S.D. Jan. 12, 2026) (holding

that the student "does not have a constitutionally protected property interest in her SEVIS registration"); *Vemula v. Noem*, No. 1:25-cv-04561, 2025 WL 3527141, at *7 (N.D. Ill. Dec. 9, 2025) ("[E]ven accepting [the students'] assertion that the liberty interest at issue is their lawful visa status, as numerous cases in this Circuit affirm, there is no constitutionally protected interest in either obtaining or continuing to possess a visa"); *Zhao v. Va. Polytechnic Inst. & State Univ.*, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018) (finding that adjusting the student's SEVIS record "without prior notice and a hearing" did not violate the student's procedural due process rights because "there is no legal basis or precedent supporting [student's] contention that his SEVIS status constitutes an independent property interest implicating due process"); *cf. Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000) (finding the plaintiff lacked a protectible liberty or property interest in the discretionary suspension of deportation).

In sum, Plaintiffs' due process claims in Counts 1 and 4 are properly dismissed.

**3. <u>Plaintiffs' APA Claims (Counts 2 & 3) Proceed</u>**

In Count 2, Plaintiffs allege that the termination of their F-1 student statuses constitutes a "Violation of Administrative Procedure Act" as "arbitrary, capricious, an abuse of discretion, contrary to constitutional right, contrary to law, in excess of statutory jurisdiction, and in violation of the *Accardi* doctrine and federal agencies' own rules" (Am. Compl. ¶¶ 80–86, citing *Accardi v. Shaughnessy*, 347 U.S. 260 (1954)). Specifically, Plaintiffs allege that nothing in their "criminal histories, academic records, or any other applicable history or record provides a statutory or regulatory basis for termination of Plaintiffs' records in SEVIS, or even for determining that any of the Plaintiffs have failed to maintain their F-1 status" (*id.* ¶ 83). In Count 3, Plaintiffs allege that Defendants' "policy and/or pattern-and-practice" of "unilaterally terminating students' F-1 and M-1 records in SEVIS for reasons that do not rise to the level required for termination under

8 C.F.R. § 214.1" also constitutes a final agency action that violates the APA (*id.* ¶¶ 87–91). Defendants make two arguments in support of summary judgment in their favor on Counts 2 and 3.

***(a) Defendants' Sovereign-Immunity Argument Lacks Merit***

First, Defendants argue that the APA, 5 U.S.C. § 704, does not waive sovereign immunity for Plaintiffs' challenge to their SEVIS records because the Privacy Act provides Plaintiffs with an alternative, adequate remedy to the APA (ECF No. 74 at PageID.1436–1437).

In response, Plaintiffs indicate that they are "unclear as to why [] Defendants continue to make this argument when the [Privacy Act] does not apply to [] Defendants based upon its own plain language" (ECF No. 80 at PageID.1475).

Defendants' argument does not entitle them to summary judgment.

Pursuant to 5 U.S.C. § 704, final agency action is reviewable under the APA "only if there are no adequate alternatives to APA review in court." *State of Tennessee v. Dep't of Educ.*, 104 F.4th 577, 602 (6th Cir. 2024) (quoting *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 600 (2016)). An alternative remedy must provide "'relief of the same genre' to the party seeking redress." *Id.* (citation omitted); *see also Student Doe v. Noem*, 781 F.Supp.3d 1055, 1065 (E.D. Cal. Apr. 17, 2025) ("An alternative remedy will not be adequate 'if the remedy offers only doubtful and limited relief.'") (quoting *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009)).

The Privacy Act does not preclude relief under the APA in this case. In general, the Privacy Act regulates the "'collection, maintenance, use, and dissemination of information'" about "individuals" by federal agencies. *Doe v. Chao*, 540 U.S. 614, 618 (2004). However, the Privacy Act specifically defines an "individual" as a "U.S. citizen or an alien lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2). As a result, the Privacy Act, by its own terms, does not apply to any of the Plaintiffs in this case. *See All. for Retired Ams. v. Bessent*, 770 F.Supp.3d

79, 105 (D.D.C. 2025) ("Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA."). Therefore, Defendants' sovereign-immunity argument does not entitle them to summary judgment of Plaintiffs' APA claims.

***(b) Defendants' No-Final-Agency-Action Argument Lacks Merit***

Defendants argue that even if the Privacy Act does not preclude APA review of Plaintiffs' claims, Plaintiffs still fail to assert a viable APA claim because the change to Plaintiffs' SEVIS record is not a final agency subject to review under the APA (ECF No. 74 at PageID.1437–1439). According to Defendants, the SEVIS record entries are only informational and administrative database updates that do not themselves determine legal rights or obligations or mark the consummation of agency decision-making (ECF No. 74 at PageID.1426; ECF No. 80 at PageID.1487).

In response, Plaintiffs argue that numerous legal consequences flow from the termination of a SEVIS record, including but not limited to the loss of employment authorization, loss of the ability to travel internationally, and the need to apply for reinstatement of status or to depart the country (ECF No. 80 at PageID.1479).

Defendants' argument does not entitle them to summary judgment.

Agency action is subject to judicial review if it is either "made reviewable by statute" or "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. To constitute "final" agency action, the action (1) must mark the "consummation" of the agency's decision-making process, i.e., the action must "not be of a merely tentative or interlocutory nature"; and (2) "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations

omitted). "Like every court to have considered the question, the Court concludes that ICE's termination of a SEVIS record is 'final agency action' reviewable under the APA." *Bushireddy*, 2026 WL 759480, at *8 (citing *Patel v. Lyons*, 827 F. Supp. 3d 1, 8, n.9 (D.D.C. 2026) (collecting cases)).

First, while the character of ICE's decision-making process, which lacked any individualized inquiry, is in question, ICE's termination of Plaintiffs' SEVIS records was the "consummation" of such process. There was no further agency action forthcoming, and there was no further agency action for Plaintiffs to invoke. ICE's decision was neither tentative nor interlocutory.

Second, ICE's termination was an action from which legal consequences flow, as Plaintiffs have set forth. At worst, the termination of their SEVIS records required them to immediately leave the country. *See* 8 U.S.C. § 1184(a)(1)); 8 C.F.R. § 214.2(f)(5)(*iv*) ("[A]n F-1 student who ... fails to maintain status is not eligible for an additional period [to prepare] for departure.")). While Defendants reiterate that changes to a student's SEVIS record do not change the student's nonimmigrant status, which is a matter dedicated to an immigration judge (ECF No. 74 at PageID.1433), Defendants' argument is belied by the language that ICE provided for terminating many SEVIS records, to wit: "FAIL[ED] TO MAINTAIN STATUS." *See Patel*, 827 F. Supp. 3d at 9 ("ICE's contrary assertion that it never terminated [the plaintiff's] F-1 status at all … is a head-scratcher.").

In sum, Defendants' no-final-agency-action argument does not entitle them to summary judgment of Plaintiffs' APA claims in Counts 2 and 3.

***(c) Plaintiffs Are Not Entitled to Judgment as a Matter of Law***

Conversely, Plaintiffs have not established that they are entitled to judgment as a matter of law on their APA claims in Counts 2 and 3. Although Plaintiffs title their submission as a "cross-motion" for summary judgment in their favor, Plaintiffs address in their short memorandum only why "Defendants' Arguments Fail" (ECF No. 80 at PageID.1475). They do not affirmatively set forth reasons for summary judgment in their favor and have embedded only sporadic assertions in support of the merits of their APA claims and made conclusory assertions about the propriety of permanent injunctive relief. With no developed argument upon which to rely, the Court declines to grant summary judgment in Plaintiffs' favor on Counts 2 and 3 at this junction. "When parties file cross-motions for summary judgment, 'the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified[.]'" *Parks*, 329 F.3d at 444–45 (citation omitted).

## III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 73) is GRANTED IN PART as to Counts 1 and 4, which are DISMISSED with prejudice, and DENIED IN PART as to Counts 2 and 3, which proceed.

**IT IS FURTHER ORDERED** that Plaintiffs' Cross-Motion for Summary Judgment (ECF No. 79) is DENIED.

**IT IS FURTHER ORDERED** that Defendants shall, not later than October 21, 2026, file their answer(s) to Plaintiffs' First Amended Complaint (ECF No. 22).

Dated: October 7, 2026

/s/ Jane M. Beckering
JANE M. BECKERING
United States District Judge